John C. Longmire (*pro hac vice* admission pending)
Matthew A. Feldman (*pro hac vice* admission pending)
James H. Burbage (*pro hac vice* admission pending)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, NY 10019

Telephone:        (212) 728-8000
Facsimile:        (212) 728-8111

Christopher A. Jones (VSB# 40064)
David W. Gaffey (VSB# 85088)
Jae Won Ha (VSB# 94781)
**WHITEFORD TAYLOR & PRESTON LLP**
Two James Center
1021 E. Cary Street, Suite 1700
Richmond, VA 23219
Telephone:        (804) 977-3300
Facsimile:        (804) 977-3299

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PAPER SOURCE, INC., *et al.*,[1] | ) | Case No. 21-30660 |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) EXTENDING TIME FOR PERFORMANCE OF OBLIGATIONS ARISING UNDER UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASES AND (B) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases (together, the "Debtors") hereby move (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order") pursuant to sections 365(d)(3) and 105(a) of title 11 of the United States Code, (the "Bankruptcy Code"), Rules 2002 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 5005-2 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Bankruptcy Rules"), and the *Order Concerning Exception to Standing Order 20-7 and Bankruptcy Court Operations Under the Exigent Circumstances Created by the Outbreak of Coronavirus Disease 2019*

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Pine Holdings, Inc. (4460) and Paper Source, Inc. (8035). The Debtors' service address is 125 South Clark St., Chicago, IL 60603.

*(COVID-19) for the Richmond Division Only*, entered on March 20, 2020, and as extended by the subsequent general order entered on May 29, 2020 (collectively, the "Richmond General Order 20-5"), (a) extending the time for the Debtors to perform obligations that arise within 60 days after the Petition Date under unexpired leases of nonresidential real property through the Extension Period (as defined herein), (b) automatically staying, for the duration of the Extension Period (as defined herein), all motions, applications, actions, or pleadings filed in these cases seeking to: lift the automatic stay as a result of the Debtors' failure to perform any obligations arising under any unexpired nonresidential real property lease; obtain a declaratory judgement in connection with the Debtors' failure to perform any obligation (including payment of rent) under any such lease; compel the Debtors' performance of any obligation (including payment of rent) under any such lease; or compel rejection, assumption, or assignment of any such lease with the Debtors, and (c) granting related relief.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Ronald Kruczynski, Chief Financial Officer of Paper Source, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] which was filed with the Court concurrently herewith, and respectfully represent as follows:

## **Background**

1.     The Debtors operate a leading lifestyle brand and retailer of premium paper products, crafting supplies and related gifts, including custom invitations, greeting cards and personalized stationery and stamps.  Through their 158 domestic stores and e-commerce website, the Debtors are an omnichannel provider of fine and artisanal papers, wedding paper goods, books and gift wrap.  The Debtors also provide wedding consultation, crafting supplies and

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings given to them in the First Day Declaration.

instructions, and subscription services.  The Debtors' administrative headquarters is in Chicago, Illinois.

2.      The Debtors commenced these cases on the date hereof (the "<u>Petition Date</u>") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in order to facilitate a timely and efficient sale process for all or substantially all of their business.  As set forth in the First Day Declaration, the Debtors believe the sale process will maximize the value of the Debtors' estates for the benefit of all stakeholders.

3.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  As of the date hereof, no trustee, examiner, or official committee has been appointed in these chapter 11 cases.

## <u>Jurisdiction and Venue</u>

4.      The United States Bankruptcy Court for the Eastern District of Virginia (the "<u>Court</u>") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated July 10, 1984.  The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution

5.      Venue of the cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.      The predicates for the relief requested herein are sections 105(a) and 365(d) of the Bankruptcy Code, Bankruptcy Rules 2002 and 9007, Local Bankruptcy Rule 5005-2, and Richmond General Order 20-5.

### Relief Requested

8.      By this Motion, the Debtors are requesting an extension on the time for the Debtors to perform under Lease Obligations (as defined herein) that arise within 60 days after the Petition Date and through and including April 30, 2021 (the "Extension Period"). Furthermore, the Debtors request that the Court automatically stay, for the duration of the Extension Period, all motions, applications, actions, or pleadings filed in these cases seeking to: lift the automatic stay as a result of the Debtors' failure to perform any obligations arising under any unexpired nonresidential real property lease; obtain a declaratory judgement in connection with the Debtors' failure to perform any obligation (including payment of rent) under any such lease; compel the Debtors' performance of any obligation (including payment of rent) under any such lease; or compel rejection, assumption, or assignment of any such lease with the Debtors, and to grant related relief.

### I.      Preliminary Statement

9.      The outbreak of the novel coronavirus ("COVID-19") and resulting global pandemic continues to be a national emergency that has materially altered the economic landscape and normalcy of everyday life for millions of people and businesses worldwide, including the Debtors.  As detailed in the First Day Declaration, prior to the outbreak of the COVID-19 pandemic, the Debtors had been enjoying rapid expansion and sustained sales growth, and had recently undertaken a significant expansion.  However, as with many other retail brands, the Debtors have sustained deep damage to their finances and operations as a result of the ongoing COVID-19 pandemic.

10.     With limited revenue generating operations during these unprecedented circumstances, the Debtors' immediate payment of approximately $6.0 million in current monthly rent obligations and amounts due relating to contractually-deferred rent payments (the "Lease Obligations") on account of 158 of their 163 total nonresidential real property leases (the "Leases") during the first 60 days of these chapter 11 proceedings ("Chapter 11 Cases") is not prudent nor in the best interest of the Debtors' estates and creditors.  This conclusion is premised on four distinct reasons:

- ***The Lasting Impact of COVID-19 on the Debtors' Retail Operations***—while the initial stage of the pandemic—marked by government mandated lockdowns—has ended, COVID-19 continues to be a material drag on the Debtors' business operations.  As described below, the Debtors can only operate many of their 158 retail locations subject to substantial occupancy limitations.  Moreover, these chapter 11 cases are taking place against the backdrop of an unprecedented public health crisis, which has unsurprisingly and understandably led to a substantial decline in in-store customer traffic and revenues.

- ***The Benefit to the Debtors' Estates Constitutes Cause to Approve the Extension Period***—the Debtors commenced these Chapter 11 Cases to implement a comprehensive restructuring that will allow the Debtors to both conduct a comprehensive post-petition marketing process, and evaluate and rationalize the Debtors' real estate portfolio, including renegotiating lease terms to align the Debtors' rent expenditures with prevailing market rates.  These goals do not exist in isolation, and are inherently intertwined.  The Extension Period will give the Debtors the time and reprieve necessary to thoughtfully engage in negotiations with Landlords (as defined herein) regarding Lease Obligations and to determine whether assumption or rejection of the applicable Leases are appropriate.  This process, in turn, will enhance the value of the Debtors to the benefit of the estates' creditors.

- ***Landlords Are Not Unduly Prejudiced by the Extension Period***—the Lease counterparties ("Landlords") will not be prejudiced by the Extension Period.  The Debtors are not seeking to waive or indefinitely defer Lease Obligations, and Lease counterparties will continue to have administrative expense claims under their Leases and the Bankruptcy Code, unless otherwise consensually agreed to with the Debtors.  Importantly, the Debtors' postpetition financing provides for sufficient funding available to pay operating expenses for the Extension Period, including Lease Obligations to the extent not consensually modified with the Landlords.

- ***The Balance of Equities Favors Suspending Lease Obligations***—in the past year, nearly all of the Debtors' employees were either furloughed, terminated, or had endured salary reductions.  Trade creditors have been operating under extended repayment terms, and

several will be asked to continue providing favorable trade terms despite potentially reduced or delayed payments. Equity holders and holders of funded debt have seen tens of millions of dollars in value destruction. Under these circumstances, nearly every creditor and stakeholder has unfortunately borne the impacts of the pandemic. The interests of Landlords—while a significant consideration—cannot be elevated over the Debtors' obligations to maximize creditor recoveries in these Chapter 11 Cases.

11.    Although the Debtors have filed these Chapter 11 Cases with significant stakeholder support, the success of these Chapter 11 Cases is not a *fait accompli*, and will be driven in large part by the Debtors' ability to rationalize their real estate portfolio. Prior to the Petition Date, the Debtors engaged real estate advisor A&G Real Estate Partners ("A&G") to review and analyze Lease Obligations. Based on that analysis, the Debtors, with the assistance of A&G, intend to negotiate with the Landlords in an effort to bring their real estate costs in line with current market conditions. The Debtors believe that success in these negotiations will help maximize creditor recoveries in these Chapter 11 Cases. Ultimately, it will be the decision of the party acquiring the Debtors to evaluate which Leases to keep as part of the business' go-forward operations, and which will be left behind (for prompt rejection). Absent material concessions from the Landlords, the Debtors anticipate rejecting numerous additional Leases in addition to the eleven (11) leases the Debtors seek to reject as of the Petition Date pursuant to *Debtors' Motion for Entry of an Order (A) Authorizing (I) the Rejection of Certain Unexpired Leases, (II) the Abandonment of any Personal Property, Effective as of the Petition Date, and (B) Granting Related Relief.*

## II.    The Lasting Impact of COVID-19 on the Debtors' Retail Operations

12.    As detailed herein and in the First Day Declaration, the economic effects of COVID-19 continue to devastate the Debtors' business operations. Following the government mandated lockdowns of last Spring, the Debtors worked tirelessly to open their retail locations as quickly as possible once such restrictions were lifted, which took approximately one week on

average.  While the initial stage of the pandemic has ended, its continued drag on the Debtors'

business operations cannot be overstated.  As of mid-February 2021, approximately 84% of the

Debtors' retail locations are subject to store occupancy limitations.  Of those, 27.5% of the

Debtors' retail stores have a 25% occupancy limit, 11.25% have an occupancy limit of 30–40%,

and 40% of the Debtors' retail locations are subject to a 50% occupancy limitation.  Several

states—most notably California, where the Debtors have 37 stores, representing approximately

23% of the entire store fleet—are continuing to impose partial commercial business lockdowns.

Although the outright government mandated lockdowns of last Spring have ended, the Debtors

are still very much operating its retail locations with one arm tied behind their backs.

13.    The cause of these occupancy restrictions is the once-in-a-century pandemic that

continues to ravage the United States.  According to the *The Atlantic's* "Covid Tracking Project,"

the United States routinely endured over 3,500 deaths per day in February 2021 as a result of

COVID-19.[3]  Moreover, over 75,000 Americans—roughly one third of the population of

Richmond, Virginia—are still routinely being diagnosed with COVID-19 *every day*.  There

remains great uncertainty as to when COVID-19 vaccines will be available to Americans,

especially those under the age of 45 (who make up the majority of the Company's customer

base).  Even assuming a sufficient vaccine supply, there remain dual public health threats posed

by Americans simply declining to accept the vaccine,[4] and three troubling coronavirus variants

that have emerged in the United Kingdom, South Africa, and Brazil,[5] some of which are already

---

[3]    *See* "The COVID Tracking Project," THE ATLANTIC (last visited Feb. 22, 2021), https://covidtracking.com/data/charts/us-daily-deaths.

[4]    *See* Madeline Holcombe, *Nearly a third of US adults are undecided about the Covid-19 vaccine.  Some say friends and family could sway them*, CNN, (Feb. 13, 2021, 7:05 PM),
https://www.cnn.com/2021/02/13/health/ us-coronavirus-saturday/index.html.

[5]    *See* Brian Resnick, *4 reasons we're seeing these worrying coronavirus variants now*, VOX, (Jan. 27, 2021, 12:10 PM), *https*://www.vox.com/science-and-health/22247525/covid-19-variants-uk-south-africa-brazil-b117-why-now.

present in the United States.[6]  Put simply, robust in-store retail operations remain incompatible against the current public health backdrop.

14.     Despite these headwinds, the Debtors remain singularly focused on operating their business in a manner that will maximize creditor recoveries.  The success of these Chapter 11 Cases depends on the success of the Debtors' post-petition marketing and sales process.  In turn, the sales process can only succeed if the Debtors can meaningfully negotiate material Lease concession with their Landlords.  By granting this Motion, the Court would allow the Debtors to make a significant first step down the path of prosecuting successful Chapter 11 Cases.

## III.    The Debtors' Obligations under Unexpired Real Property Leases

15.     The Debtors are party to approximately 163 Leases.  These leases are located across the country in 29 states, and the Debtors have approximately 121 Landlords.  The vast majority of the Leases are for consumer facing store-front properties located on large metro area streets and in suburban shopping and lifestyle centers, both of which derive their value from foot traffic and in-person retail transactions.  Though the Debtors recognize that these locations serve an essential purpose in their business operations, they currently represent a significant strain on the Debtors' operating liquidity.  The Debtors' obligations under the Leases are approximately $3.0 million each month.  In addition, the Debtors estimate that as of the Petition Date they owe approximately $15.8 million in deferred Lease Obligations, of which approximately $340,000 will become contractually due during the Extension Period.

16.     In the early months following the COVID-19 outbreak and pandemic, the Debtors negotiated with the Landlords and achieved modifications or deferrals under most of the Leases, which varied in favorability.  Some Landlords agreed to abate the Debtors' rent for the months

---

[6]     *See* "US COVID-19 Cases Caused by Variants," CENTERS FOR DISEASES CONTROL AND PREVENTION, (last updated Feb. 21, 2021), https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant-cases.html.

when all of the Debtors' retail store locations were closed, other Landlords agreed to some combination of rent abatement and payment deferral until the end of 2020, and other Landlords agreed to defer all rent payments until the current year.  The Debtors intend and hope to continue working collaboratively with many of the Landlords who have proven to be true partners throughout the course of the pandemic.

17.     Like many other retailers during this time, the Debtors will not be able to comfortably pay their Lease Obligations and additional deferred rent payments until ordinary operations resume at their stores, which the Debtors estimate will not occur until the later months of this year, well after the Extension Period.  This is especially true given that many of the Leases contain so-called "escalator" clauses which provide for annual rent increases regardless of strength of sales in individual stores.  Given these ongoing challenges, the Debtors request a deferral of Lease Obligations that will arise during this 60-day period.  Such relief will help maximize value for the Debtors' estates, which will benefit all stakeholders.

**Basis for Relief**

18.     Section 365(d)(3) of the Bankruptcy Code authorizes the Court to extend the Debtors' obligations under their unexpired Leases during the first 60 days of these Chapter 11 Cases for cause.  *See* 11 U.S.C. § 365(d)(3) ("The court may extend, for cause, the time for performance of any [of the Debtors'] obligation that arises within 60 days after the date of the order for relief").  Although the Bankruptcy Code does not define "cause," at least one court has considered whether there is a "specific cause" articulated by a debtor or "applicable legal precedent."  *In re Pac-West Telecomm, Inc.*, 377 B.R. 119, 126 (Bankr. D. Del. 2007).

19.     The legislative history of section 365(d)(3) states that the "60-day grace period is intended to give the trustee [or debtor] time to determine what lease obligations the debtor has and to locate the cash to make the required payments in exceptionally large or complicated

cases." *See* 130 Cong. Rec. S8894–95 (daily ed. June 29, 1984); *see*, *also*, *Feld v. S & F Concession, INC. (In re S & F Concession, Inc.)*, 55 B.R. 689, 690 (Bankr. E.D. Pa. 1985).  This Court has previously relied on the legislative history and Congressional intent behind section 365(d)(3) when deciding how to enforce the statute.  *See Santa Ana Best Plaza, Ltd. v. Best Prods. Co. (In re Best Prod. Co.)*, 206 B.R. 404, 406–07 (Bankr. E.D. Va. 1997) (citing to the legislative history when determining the method of calculating and timing of postpetition rent payment).

20.    As set forth more fully below, the Debtors believe that the extraordinary circumstances resulting from COVID-19, the benefit to the Debtors' estate in granting the relief requested, and the lack of undue prejudice to the Landlords constitute cause to approve the Extension Period.  Finally, the balance of equities favors approving the Extension Period.

## I.    Persisting Extraordinary Circumstances Resulting from the COVID-19 Pandemic Constitute Cause to Approve the Extension Period

21.    The effects of COVID-19 have undeniably resulted in persisting extraordinary circumstances that constitute cause for approving the Extension Period.  The pandemic continues to be a national emergency, materially altering the economic landscape and normalcy of everyday life for millions of people and businesses worldwide.  Government-issued mandates have closed businesses and have left communities sheltered in place.  As for many retailers, persistent restrictions have caused the Debtors' slow crawl out of the pandemic's grasp.  The Debtors' brick-and-mortar retail stores—which accounted for approximately 83% of its total gross revenue prior to the pandemic—continue to operate at historically low levels.  For example, the average decline in the Debtors' year-over-year same store sales over the past 12 months is almost 50%.  The outlook for in-store retailers continues to look bleak, as evidenced

by the significant occupancy limitations currently imposed on approximately 84% of the Debtors' locations, along with the ongoing public health crisis.

22.    Since the start of the pandemic, bankruptcy courts considering whether to grant extensions of time have rightfully identified COVID-19 as constituting "exceptional cause"[7] for an "extraordinary situation,"[8] and have accordingly approved extensions similar to that requested herein.  *See, e.g.*, *In re Studio Movie Grill Holdings, LLC,* Case No. 20-32633 (SGJ)  [Docket No. 249] (Bankr. N.D. Tex. Nov. 30, 2020) (suspending and extending time for debtors' performance of obligations under their unexpired real property leases); *In re RTI Holding Company, LLC,* Case No. 20-12456 (JTD) [Docket No. 180] (Bank. D. Del. Oct. 22, 2020) (extending the debtors' performance of obligations under unexpired leases of nonresidential real property pursuant to section 365(d)(3)); *In re Le Tote, Inc.,* Case No. 20-33332 (KLP) [Docket No. 265] (Bankr. E.D. Va. Aug. 28, 2020) (extending time for performance of debtors' obligations arising under unexpired non-residential real property leases); *In re Brooks Brothers Group, Inc.*, Case No.20-11785 (CSS) [Docket No. 272] (Bankr. D. Del Jul. 31, 2020) (extending the debtors time for performance of obligations arising under unexpired non-residential real property leases); *In re Pier 1 Imports, Inc.*, 615 B.R. 196, 203 (Bankr. E.D. Va. 2020) ("There is no feasible alternative" to granting the debtors a rent deferral.); *In re Art Van Furniture,* LLC, Case No. 20-10553 (CSS) [Docket No. 373] (Bankr. D. Del. Apr. 27, 2020) (extending time for performance of lease obligations under section 365(d)(3)).  As COVID-19 is ongoing, exigent circumstances continue to exist, and similar relief should be granted here.

---

[7]    Hr'g Tr. at 63:4, *In re Modell's Sporting Goods, Inc.*, No. 20-14179 (VFP) (Bankr. D.N.J. Mar. 25, 2020)

[8]    *Id*. at 39:23

## II.      The Benefit to the Debtors' Estates Constitutes Cause to Approve the Extension Period

23.      The Debtors submit that they will derive significant benefit from a temporary extension of the Lease Obligations during the Extension Period.   Collectively, the Lease Obligations represent a liability of approximately $3 million per month to the Debtors' estate. Temporarily extending the Lease Obligations will allow the Debtors to access much needed expendable capital and maintain operational flexibility during the critical first two months of their bankruptcy.

24.      The Extension Period will give the Debtors the time and reprieve necessary to thoughtfully engage in negotiations with the Landlords regarding the Lease Obligations and to determine whether assumption or rejection of the applicable Leases are appropriate.   *See In re DWE Screw Prods., Inc.*, 157 B.R. 326, 329 (Bankr. N.D. Ohio 1993) (holding that "attempts at negotiating settlement constitute 'cause' for extending the time for performance an additional sixty (60) days" under section 365(d)(3)).   Such negotiations are critical to the success of the Debtors' postpetition sales and marketing process, and will ultimately help maximize creditor recoveries.   Denying this Motion would elevate the short-term interests of Landlords at the expense of other key stakeholders, such as employees, vendors, and other creditors.   That would be especially unfortunate here, where the Debtors hope to continue the successful operation of a significant majority of their store locations.   Accordingly, the benefit to the estates is sufficient cause to warrant approval of the Extension Period under section 365(d)(3).

## III.      Landlords Are Not Unduly Prejudiced by the Extension Period

25.      The Debtors appreciate that the Landlords have also suffered certain hardships as a result of the COVID-19 pandemic.   Nonetheless, the Debtors believe that extending the time

for the Debtors to perform Lease Obligations arising within the Extension Period does not

represent an overly burdensome harm to the Landlords.

26.    The Landlords may pursue administrative expense claims for the Lease

Obligations extended pursuant to section 365(d)(3). *See In re Circuit City Stores, Inc.*, 447 B.R.

475, 508 (Bankr. E.D. Va. 2009) ("[A] lessor is entitled to recover all payments due under the

lease . . . as an administrative expense, but the lessor must still assert its administrative expense

claim under § 503(b)[.]") (internal quotation marks omitted).   Courts, however, have discretion

as to the application of section 365(d)(3) and the timing in which the Debtors must pay

postpetition rent in the event of an extension.   Indeed, this Court has noted that:

> Section 365(d)(3) of the Bankruptcy Code requires the Debtors to *timely*
> perform all their obligations under their Leases. *Timely* could mean
> immediately, as argued by certain Lessors in this case. *Timely* could
> mean whatever period for timely performance is provided by the lease
> terms, as the Debtors' argue.   *Timely* could mean that payment of these
> administrative claims should be made with all other administrative
> claims—upon the effective date of the plan.

*Id.* at 509.   Under "dire financial circumstances . . . the Court has discretion under the

Bankruptcy Code and [applicable bankruptcy case law] . . . to decline to order immediate

payment of the…[r]ent."   *Id.* at 511 (internal citation omitted); *see also In re Pier 1 Imports, Inc.*,

615 B.R. at 202 ("[S]ection 365(d)(3) does not give the Lessors a right to compel payment from

the Debtors in accordance with the terms of the underlying leases.   Rather, to the extent that the

Debtors are obligated to pay rent and fail to timely pay such rent, the Lessors are entitled to an

administrative expense claim.").

27.    Furthermore, extending the time for the Debtors to perform Lease Obligations

arising within the Extension Period would be consistent with the prior decisions of this Court and

courts in other districts.   *See id.* at 511–12 (holding that payment of postpetition rent claims at

the effective date is "timely" under section 365(d)(3)); *see also In re Goody's Family Clothing,*

*Inc.*, 392 B.R. 604, 607 (Bankr. D. Del. 2008) ("An administrative expense claim under section 503(b)(1) for post-petition rent, however, need not be timely paid under section 365(d)(3). Rather, the timing of the payment is in the Court's discretion."), *aff'd*, 610 F.3d 812 (3d Cir. 2010); *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005) ("Courts have discretion to determine when an administrative expense will be paid."); *In re New Almacs, Inc.*, 196 B.R. 244, 250 (Bankr. N.D.N.Y. 1996) ("[Section] 365(d)(3) leaves little discretion to the Court with respect to requiring the Debtor to treat the postpetition rent obligations on nonresidential real property leases as administrative expenses. The Court does, however, have a certain amount of discretion with respect to the timing of the payments in these situations."). Thus, if cause exists, as it does here, the payment of administrative claims for postpetition rent as late as the effective date is considered "timely" under section 365(d)(3).

28.     Finally, the Debtors' postpetition financing budget presently provides for sufficient liquidity to pay for operating costs through and after the Extension Period, which will include the Lease Obligations for Leases not rejected or otherwise consensually modified with the Landlords. The Extension Period, therefore, does not result in any significant risk to Lease counterparties for obligations arising during the Extension Period and instead merely changes the timing of payment as expressly permitted by section 365(d)(3) of the Bankruptcy Code.

## IV.    The Balance of Equities Favors Suspending Lease Obligations

29.     In light of the benefit to the Debtors' estates and the limited, if any, prejudice to the Landlords during the Extension Period, the balance of equities favors approving the Extension Period. As stated, the Landlords are just one group among the Debtors' stakeholders affected as a result of COVID-19. Every stakeholder in these Chapter 11 Cases—from the Debtors' employees who were furloughed last year to the funded debt and equity holders who have seen tens of millions of dollars in value destructions—have shared the pain brought on by

COVID-19.   Approving the Extension Period would best position the Debtors to minimize additional creditor pain.

30.     Moreover, approving the Extension Period would also be consistent with the public interest under the circumstances.  Granting the Extension Period will help alleviate any pressure on the Debtors to operate their stores in a manner that puts employees or customers at risk.   Though eager to resume completely normal operations, the Debtors recognize their responsibility to comply with federal, state, and local government health mandates.  In that spirit, the Debtors have gone above and beyond such mandates to help promote the safety of their employees and customers, such as by requiring customers to remain six feet apart while on line. The Debtors also close immediately any store where an employee tests positive for the virus and will not reopen until an industrial cleaning is carried out, which may take 24 hours to complete. In the event that an employee tests positive for the virus, the Debtors conduct a thorough contact tracing and require both the affected employee and any other "exposed" employees to quarantine for 14 days before returning to work.  Approving the Extension Period would allow the Debtors to act in a socially responsible manner, even if such actions might contradict short term profit incentives.

31.     In light of the benefits to the estates, shared pain on the part of all stakeholders (not just Landlords), and the public interest at hand, the Debtors believe that the balance of equities favors approving the Extension Period.  Placing the long-term viability of the Debtors at risk for the short-term revenues of Landlords will likely result in significant harm to a larger group of stakeholders who themselves incurred significant hardship.  Accordingly, the Court should find sufficient cause to grant to Extension Period under section 365(d)(3).

**V.      Pleadings and Motions Related to Lease Obligations Should Be Stayed During the Extension Period**

32.      Consistent with the purpose of the Extension Period and the Bankruptcy Code, the Debtors request that any pleadings or motions seeking to enforce obligations under the Leases be stayed through the Extension Period.

33.      Section 105 of the Bankruptcy Code provides the Bankruptcy Court with "broad exercise of power in the administration of a bankruptcy case." *See Davis v. Davis (In re Davis)*, 170 F.3d 475, 492 (5th Cir. 1999).  Bankruptcy Courts often rely on section 105 for the authority to protect and effectively administer estate assets.  *See* 2 Collier on Bankruptcy ¶ 105.02 (16th ed. 2020) ("[Section 105] has also been used as the basis for staying actions by third parties against avoiding powers actions prior to the time the estate decides to pursue or abandon them."); *see also Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank and Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 436 (S.D.N.Y. 1993) ("In order to allow the Trustee to assert actions which are property of the debtor's estate for the benefit of the estate as a whole, other claimants may be prohibited by the Bankruptcy Court from pursuing such actions under 11 U.S.C. § 105(a)."), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

34.      Additionally, the use of section 105 as the basis for "tolling" certain time periods is "consistent with the underlying philosophy of the Bankruptcy Code."  *See U.S. v. Richards (In re Richards)*, 994 F.2d 763, 765 (10th Cir. 1993).  Indeed, this Court has recognized its authority to "fashion[] whatever solutions we can possibly be coming up with in these just unforeseen, undocumented times." Hr'g Tr. at 61:20–22, *In re Pier 1 Imports, Inc.*, Case No. 20-30805 (KRH) (Bankr. E.D. Va. Apr. 2, 2020).

35.      Staying pleadings or motions seeking to enforce obligations under the Leases would be consistent with the Bankruptcy Code and the purpose of the Extension Period.  Absent

the stay, the Debtors could be faced with several motions to compel or similar pleadings, which would defeat the purpose of the relief provided by section 365(d)(3). Rather, the stay and tolling will permit the Debtors to focus on efficient administration of their chapter 11 cases and stabilizing their businesses during the initial transition periods of chapter 11. Accordingly, the Debtors believe that the relief requested herein is in the best interest of their estates and should be granted.

### Waiver of Memorandum of Points and Authorities

36.     The Debtors also respectfully request that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Local Bankruptcy Rule 9013-1(G).

### Reservation of Rights

37.     Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code, any foreign bankruptcy or insolvency law, or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds, (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an

admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Notice**

38.     The Debtors will provide notice of this Motion via first class mail, facsimile or email (where available) to: (a) the United States Trustee for the Eastern District of Virginia; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agents under the Debtors' prepetition first and second lien secured term loans and counsel thereto; (d) MidCap Financial Trust and counsel thereto; (e) Victory Park Management, LLC and counsel thereto; (f) the United States Attorney's Office for the Eastern District of Virginia; (g) the Internal Revenue Service; (h) the Office of the Attorney General for the states in which the Debtors operate; (i) the National Association of Attorneys General; (j) the Landlords; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

39.     No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order

granting the relief requested herein and such other relief as the Court deems appropriate under

the circumstances.

Richmond, Virginia
Dated: March 2, 2021

*/s/ Christopher A. Jones*

| | |
|---|---|
| Christopher A. Jones (VSB# 40064) | John C. Longmire (*pro hac vice* admission pending) |
| David W. Gaffey (VSB# 85088) | Matthew A. Feldman (*pro hac vice* admission pending) |
| Jae Won Ha (VSB# 94781) | James H. Burbage (*pro hac vice* admission pending) |
| **WHITEFORD TAYLOR & PRESTON LLP** | **WILLKIE FARR & GALLAGHER LLP** |
| Two James Center | 787 Seventh Avenue |
| 1021 E. Cary Street, Suite 1700 | New York, NY 10019 |
| Richmond, VA 23219 | |
| Telephone:    (804) 977-3300 | Telephone:    (212) 728-8000 |
| Facsimile:    (804) 977-3299 | Facsimile:    (212) 728-8111 |

*Proposed Co-Counsel to the Debtors*          *Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*                    *and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

Johns C. Longmire (*pro hac vice* admission pending)
Matthew A. Feldman (*pro hac vice* admission pending)
James H. Burbage (*pro hac vice* admission pending)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, NY 10019

Telephone:    (212) 728-8000
Facsimile:    (212) 728-8111

Christopher A. Jones (VSB# 40064)
David W. Gaffey (VSB# 85088)
Jae Won Ha (VSB# 94781)
**WHITEFORD TAYLOR & PRESTON LLP**
Two James Center
1021 E. Cary Street, Suite 1700
Richmond, VA 23219
Telephone:    (804) 977-3300
Facsimile:    (804) 977-3299

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PAPER SOURCE, INC., *et al.*,[1] | ) | Case No. 21-30660 |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## ORDER (A) EXTENDING TIME FOR PERFORMANCE OF
## OBLIGATIONS ARISING UNDER UNEXPIRED NON-RESIDENTIAL
## REAL PROPERTY LEASES AND (B) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the debtors and debtors in possession in the above-captioned cases (together, the "Debtors") for entry of an order (this "Order"), pursuant to sections 365(d)(3) and 105(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 9007, Local Bankruptcy Rule 5005-2, and Richmond General Order 20-5: (a) extending until the conclusion of these cases the time for the Debtors to perform obligations arising within 60 days after the Petition Date under unexpired leases of nonresidential real property through the Extension Period (as defined herein); and (b) automatically staying all motions, applications, actions, or pleadings

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Pine Holdings, Inc. (4460) and Paper Source, Inc. (8035). The Debtors' service address is 125 South Clark St., Chicago, IL 60603.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

filed in these cases seeking to lift the automatic stay as a result of the Debtors' failure to perform any obligations arising under any unexpired nonresidential real property lease, obtain a declaratory judgement in connection with the Debtors' failure to perform any obligation (including payment of rent) under any such lease, compel the Debtors' performance of any obligation (including payment of rent) under any such lease, or compel rejection, assumption, or assignment of any such lease with the Debtors, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated July 10, 1984; and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief granted herein is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and due and proper notice of the Motion having been given and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules having been satisfied by such notice; and no other or further notice of the Motion being required; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted to the extent set forth herein.

2.      The time for the Debtors to perform obligations arising within sixty (60) days after the Petition Date and through April 30, 2021 (the "Extension Period") under any unexpired leases of nonresidential real property is extended.

3.      The Debtors' failure to timely perform their obligations (including failure to pay lease obligations) under an unexpired nonresidential real property lease during the Extension Period will not constitute a rejection or breach of any such lease, and the rights of all parties related to any payments or obligations accruing or due but unpaid by the Debtors are reserved.

4.      All motions, applications, actions, or pleadings filed in these cases seeking to (a) lift the automatic stay as a result of the Debtors' failure to perform any obligations arising under any unexpired nonresidential real property lease, (b) obtain a declaratory judgement in connection with the Debtors' failure to perform any obligation (including payment of rent) under any such lease, (c) compel the Debtors' performance of any obligation (including payment of rent) under any such lease, (d) or compel rejection, assumption, or assignment of any such lease with the Debtors, in each case shall be automatically stayed during the Extension Period unless otherwise agreed by the Debtors.

5.      The relief in this Order is without prejudice to the Debtors' right to seek an abatement, suspension, or deferral of obligations under an unexpired nonresidential real property lease pursuant to (a) any provision of the Bankruptcy Code, (b) state or other applicable law, or (c) the terms of a specific lease agreement.

6.      Nothing in this Order shall create, or is intended to create, any rights in favor of or enhance the status of any claim held by any party.

7.      Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 9014 and the Local Bankruptcy Rules.

8.      This Order shall be immediately effective and enforceable upon its entry.

9.      The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is waived to the extent necessary.

10.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

11.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: _____,
        Richmond, Virginia                    _____
                                              UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

*/s/ Christopher A. Jones*
Christopher A. Jones (VSB# 40064)
David W. Gaffey (VSB# 85088)
Jae Won Ha (VSB# 94781)
**WHITEFORD TAYLOR & PRESTON LLP**
Two James Center
1021 E. Cary Street, Suite 1700
Richmond, VA 23219
Telephone:         (804) 977-3300
Facsimile:         (804) 977-3299

- and –

John C. Longmire (*pro hac vice* admission pending)
Matthew A. Feldman (*pro hac vice* admission pending)
James H. Burbage (*pro hac vice* admission pending)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, NY 10019
Telephone:         (212) 728-8000
Facsimile:         (212) 728-8111

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## <u>CERTIFICATION OF ENDORSEMENT</u><br><u>UNDER LOCAL BANKRUPTCY RULE 9022-1(C)</u>

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/ Christopher A. Jones*